## FLING *v.* GOODALL.

In section 16, chapter 208, of the Revised Statutes, relating to the trustee process, the words "personal property" include promissory notes and other choses in action, such as are enumerated in section 15 of the same chapter; and when a person summoned as trustee holds such notes, &c., due to the principal debtor, in pledge or as collateral security, a receiver should be appointed.

H., who held notes payable to G., as collateral security for G's indebtedness to him, afterward signed a guardian's bond with G., at his request, which guardianship, from the nature of the case, would be likely to continue for a series of years; and it was agreed at the time that H. should also hold said notes as security or indemnity against any liability upon said bond:

*Held*, that such agreement, if made *bonâ fide*, is valid, and must be carried into effect, and that a creditor of G. cannot take such notes from the hands of H. by the trustee process, without first indemnifying him against his liability upon such bond ; and the fact that H's liability upon the bond is contingent or remote, does not change the principle.

THE questions of law arise in this case, upon the dis-closure of the trustee, Chester C. Hutchins, as follows :

"In 1853 Mr. Goodall, being indebted to me in the sum of about $8,000—the exact sum I cannot now state—pledged to me, as collateral security for the same, sundry negotiable promissory notes, all of which were secured by mortgages on real estate, executed by the makers of said notes. Of these notes I have collected sufficient to pay a small portion only of my debt. I have since received, to hold in pledge in the same manner as the above named notes, a negotiable promissory note, secured by mortgage on real estate, in like manner with the notes above mentioned, from Judge Woods, with the assent of Mr. Goodall, and with a liability, however, to refund to Judge Woods, in case the other securities holden by Judge Woods prove insufficient to satisfy his debt, it being understood and agreed by all parties that any balance remaining in Judge Woods' hands, after satisfaction of

his debt, was to be paid over to me. Since these notes were pledged to me, as aforesaid, I have signed a guardian's bond with said Ira Goodall and Samuel H. Goodall, at the request of said Ira Goodall, and upon the said Ira's agreement to indemnify and save me harmless from all cost or damage by reason thereof. The guardianship is of such a character that it will be likely to continue for a series of years. At the time of my signing said bond, and as an inducement for me to sign the same, Mr. Goodall agreed that I should hold the notes, pledged as aforesaid, as well for my security and indemnity against my liability on said bond as for his said indebtedness. Mr. Goodall also owes me on an unsettled account of a number of years' standing. I have not the means here with me to state the dates and amount of the several notes holden by me as above stated; but, if they should all prove available and be collected, there will be a surplus over the amount of Mr. Goodall's indebtedness to me, as I now think, of several hundred dollars, provided I suffer no loss or damage by reason of my signing the bond above named, in which bond Samuel H. Goodall is principal and said Ira Goodall was surety. Said bond bears date, I think, several months before the service of this process upon me.

CHESTER C. HUTCHINS."

The parties agreed that in case it should be finally holden that said trustee may be chargeable on his disclosure, then said trustee should make a further and full disclosure; and the questions thus raised were transferred to this court.

*Benton & Ray*, for the plaintiff.

I. A receiver should be appointed to collect the money due on the demands pledged to Hutchins, and to pay him the sum justly due from Goodall, while the balance should apply toward the plaintiff's claim here. Comp. Stat., ch. 221, secs. 15, 16.

II. Hutchins is not released as trustee of the defendant by signing the guardian's bond. (1.) Holding the contrary doctrine would be opening wide the door to aid a dishonest debtor in defrauding his creditors. It would furnish the most convenient way in the world for a man to place effectually beyond the reach of every creditor all his property, to secure merely a contingent liability, which, in all probability, never would become actual. The policy of the law is to make men honest, but to hold this doctrine would furnish one of the strongest inducements for them to become dishonest. Such a disposition of a man's property is contrary to the policy of the law. (2.) A mere contingent liability, which does not become actual before the disclosure or before judgment, will not discharge the trustee. He can retain the property of the principal defendant in his hands to indemnify himself only against such liabilities as become actual and absolute before judgment. *Swamscot Co.* v. *Partridge*, 25 N. H. 369; Cushing on Trustee Process 60, 65; *Hathaway* v. *Russell*, 16 Mass. 473.

*Carpenter* (with whom were *H. & G. A. Bingham*), for the trustee.

The trustee must be charged, if at all, under either the 15th or 16th section of chapter 221, Compiled Statutes; *Hudson* v. *Hunt*, 5 N. H. 538; *Stone* v. *Dean*, 5 N. H. 502; *N. H. I. F. Co.* v. *Platt*, 5 N. H. 193; 22 N. H. 108; and the question is upon the construction of these sections. He is not chargeable under the 15th section. (1.) Its provisions are wholly inconsistent with and utterly ignore any right or interest whatsoever of the trustee in the property specified, whether as a pledge or otherwise. (2.) The words used in the 15th section, to express the principal debtor's title to or interest in the notes, &c., are equivalent in effect to the words used for the same purpose in section 8 of the same chapter. They certainly do not import less interest or an inferior title. But, under the 8th section, it

was held that the trustee was not chargeable when he held the goods in pledge. *Hudson* v. *Hunt*, 5 N. H. 538 ; *Briggs* v. *Walker*, 21 N. H. 77.

The trustee cannot be charged under the 16th section. (1.) The words "personal property" cannot be construed to cover choses in action. They are to be construed here as in section 1, ch. 138 ; sec. 4, ch. 207. (2.) The words "personal property" are not more comprehensive than the words "money, goods, chattels, rights or credits," used in the 8th section. Yet it is holden that a trustee cannot be charged under the 8th section of the statute when he owes the defendant upon a negotiable promissory note; *Stone* v. *Dean*, 5 N. H. 502 ; *Haven* v. *Wentworth*, 2 N. H. 93 ; or when the trustee has in his possession notes belonging absolutely to the principal defendant ; *Stone* v. *Dean*, 5 N. H. 502 ; *Haven* v. *Wentworth*, 2 N. H. 93 ; or when the trustee has in his possession goods which the debtor has a mere right to make his own, as by reducing them to his possession ; *Marston* v. *Carter*, 12 N. H. 159 ; or for tort, or where the claim is for unliquidated damages. *Foster* v. *Dudley*, 30 N. H. 462 ; *Despatch Line, &c.*, v. *Bellamy*, 12 N. H. 238. (3.) It is made the duty of the receiver to "dispose of," that is, to sell the property, if a greater amount, &c., can be obtained ; and it is holden by the court that the only proper way in which the property referred to can be disposed of is by sale at public auction. *Briggs* v. *Walker*, 21 N. H. 72 ; *Hills* v. *Smith*, 28 N. H. 369. In the 15th section, where notes are named, the receiver is required to "collect," which is the only proper, ordinary and legitimate way of realizing notes, &c. ; and the legislature would doubtless have used the same terms in prescribing the duties of the receiver, in the 16th section, if it was intended to cover the same kind of property. (4.) The language used in the 17th section shows that the legislature did not understand that notes, &c., are comprised under the general words "personal property."

(5.) The sum which is, and which may be due to the trustee from the defendant, is contingent and uncertain, and the statute applies to those cases only where a certain sum is due. The statute cannot be executed in a case like this, because the sum due to the trustee cannot be ascertained, and, therefore, the property cannot be sold. *Briggs* v. *Walker*, 21 N. H. 72; *Hills* v. *Smith*, 28 N. H. 369. It is clear beyond question that a receiver, if appointed, can do nothing. The fact upon which his authority to act under the statute depends cannot be determined, and this circumstance, of itself, shows that the statute was never intended to apply to such a case. (6.) All the grounds upon which it is held that a trustee cannot be charged for a debt payable upon a contingency exist in this case. *Clement* v. *Clement*, 19 N. H. 464; *Wood* v. *Partridge*, 11 Mass. 493. (7.) If the court should be of opinion that a receiver should be appointed, and the notes offered for sale, then the penal sum in the bond must be taken to be the sum due to the trustee, so far as the liability on the bond is concerned.

SARGENT, J. It appears by the disclosure that the defendant was largely indebted to the trustee, and had delivered to him negotiable promissory notes, secured by mortgage upon real estate, as collateral security for said indebtedness; and that, subsequent to this, the trustee had signed a certain guardian's bond with the defendant, at his request, with an agreement that the trustee should hold said securities also as indemnity against any liability upon said bond; all which was done before the service of the trustee process in this suit; and that said debt from the defendant still remains due and unpaid, and that the trustee's liability still continues upon said bond, and will be likely to continue for some years to come. It also appears that if the trustee should suffer no loss or damage in consequence of signing said bond, and that if said

notes should all be collected, as we presume they may be, there would probably be a considerable balance in the hands of the trustee, over and above satisfying the defendant's indebtedness.

The first question raised is, whether the trustee, upon the facts disclosed, would be chargeable, were there no liability upon the guardian's bond, and were the notes holden by him merely as collateral security for the debt of the principal defendant. The plaintiff claims that the trustee would be thus chargeable, under sections 15 and 16 of chapter 208 of the Revised Statutes [Compiled Laws 529], which are as follows:

SECTION 15. "If, upon the disclosure of any person summoned as trustee in the Court of Common Pleas, or upon the trial of an issue between him and the plaintiff, it shall appear that such person had in his possession, at the time of the service of the process upon him, or afterward, any promissory note, order, receipt, bill of exchange, bond, or other promise for the payment of money, or the delivery of property belonging to the principal defendant, the court may appoint a receiver, whose duty it shall be, under the direction of the court, to collect and apply the proceeds to the payment of the debt and costs recovered by the plaintiff against the principal debtor, and to pay the surplus, if any, to such debtor."

SEC. 16. "If it shall appear, as aforesaid, that the person summoned as trustee had in his possession, at the time of the service of such process, or afterward, any personal property of the principal defendant, and that the same is subject to any pledge, lien or mortgage, and at the time of the disclosure has not been sold by the trustee, the court may appoint a receiver, whose duty it shall be, under the direction of the court, to dispose of the same, if a greater amount than the sum due can be obtained therefor, and after paying the amount of such pledge, lien or mortgage, to apply the balance as aforesaid."

The 17th section of the same chapter provides that "if the person so summoned as trustee shall refuse, in either of the cases specified in the two preceding sections, to deliver any such note, order, receipt, bill, bond, promise, or other property, on the order of the court, he shall be charged as trustee for the amount thereof, and judgment be rendered and execution issue accordingly."

The trustee claims that he is not chargeable under either of the sections of the statute referred to. His position is undoubtedly correct so far as section 15 is concerned, as this section evidently does not make any reference to any interest of the trustee in the notes or other property specified in that section, either as pledgee or otherwise. The receiver is to collect and apply the avails, first, to pay the debt and costs recovered against the principal debtor, and then to pay over the surplus, if any, to such debtor. He is required to treat the notes and other property specified as the absolute and exclusive property of the principal debtor, and no provision is made in that section to protect the rights of the trustee or any body else as pledgee of such notes. The position that the trustee is not chargeable under section 16 aforesaid, is based upon the ground that the words "personal property" cannot properly and should not be construed as covering and embracing choses in action; that the words personal property are not more comprehensive than the words, "goods, chattels, rights or credits," in the 8th section of the same chapter; and it is contended that it has been held that, under that section, a trustee could not be charged when he owed the principal defendant upon a negotiable promissory note, or when the trustee holds in his possession notes of third persons belonging absolutely to the principal debtor; and the argument assumes that such decisions have been made upon the ground that the terms, "goods, chattels, rights or credits," were held not to be broad and comprehensive enough to cover and include

choses in action; and therefore, assuming that to have been the ground upon which the decisions have been based, it is claimed that the words personal property, in section 16, must necessarily receive the same limited construction, and that, therefore, these last words cannot properly, and should not be construed as embracing and including such choses in action. Now, if it were true that the decisions in this State, excluding promissory notes from the operation of the trustee process, prior to 1841, were made upon the ground that the words, "goods, chattels, rights or credits," which were at that time contained in the statute, did not and could not properly be construed to cover and comprehend notes and other choses in action, then, probably, the conclusion would follow that no broader construction should be given to the words "personal property" than had been given to the word chattel in the other section. But such was not the fact. The assumption in the argument is not well founded, and the premises being incorrect, of course the conclusion is erroneous; for there can be no pretence that the term chattel, as also the term personal property, either of them in their broadest sense are comprehensive enough to include notes and all choses in action. "Chattel is a very comprehensive term, and includes every species of property which is not real estate or freehold;" 2 Kent's Com. 341; 2 Bl. Com. 386; and all goods, chattels, rights and credits are personal property. Prior to 1841 there were no provisions in our statute concerning the trustee process precisely similar to those now contained in sections 15, 16, 17, 18, 19, 20, 21, 25, 28, 29, 33 and 34. A section similar to section 8 in our present law was incorporated into the law of 1791, upon this subject, and some time later a provision similar to the 11th and 12th sections of our present law, was introduced, providing that if the trustee has any goods or chattels of the principal defendant in his possession, or is under contract for the delivery of specific

articles to the debtor, judgment shall be rendered and
execution issue against the trustee therefor. See N. H.
Laws of 1830, 501, sec. 7. Under these provisions of
law it had been held that any goods and chattels, subject
to any pledge or lien, could not be reached by the trustee
process, and however valuable might be the reversionary
or equitable interest of the principal debtor in such prop-
erty, subject to such pledge or lien, such interest could
not be reached by his creditors. *Haven* v. *Wentworth*, 2
N. H. 93; *Hudson* v. *Hunt*, 5 N. H. 538. In 1832 a law
was passed, one section of which was similar in some
respects to the 16th section of our present law concerning
the trustee process, and which made some provision for
the defect which had been discovered to exist in case of
property subject to mortgage, pledge or lien.

It had, also, been held that, under the provisions of the
law as they then existed, a trustee could not be charged
for a negotiable promissory note, which he might owe to
the principal debtor, nor on account of such notes of
third persons, or other choses in action belonging to the
debtor, which had been deposited with the trustee. *Haven*
v. *Wentworth*, *ante; Stone* v. *Dean*, 5 N. H. 502; *Fletcher* v.
*Fletcher*, 7 N. H. 452. But it was so held, not because it
was understood that the words, "goods, chattels, rights or
credits," in the existing statutes, could not properly be
construed as including negotiable notes and other choses
in action, as is assumed in the argument here, but for a
far different reason. In *Stone* v. *Dean*, 5 N. H. 502, *Rich-
ardson*, C. J., says, "It is settled that a trustee cannot be
charged by reason of choses in action deposited in his
hands." He then adds: "It has always been considered
as settled in this State, that a trustee who had given a
negotiable note to the principal, cannot be charged as a
trustee on account of such note. The reason of this rule
is founded upon the negotiable quality of the paper. If
the trustee could be charged in such a case, then it might

happen that either a *bonâ fide* purchaser of the note must lose the amount of it, or the maker, without any fault on his part, be compelled to pay it twice. To avoid such a dilemma, the rule was established." Here we find the true reason stated why the courts had thus held, and why they continued thus to hold down to 1841; because there were then no provisions in the law relating to trustee process which could protect all parties in their rights, and still reach this species of property by the trustee process. All negotiable paper and other choses in action being thus necessarily excluded from the operation of the trustee process, it was found that some further provision was necessary; or a dishonest debtor might hold a large property in negotiable notes, either in his own hands, or lodged in the hands of some friend, for his sole benefit; or he might pledge any amount of such notes to some favored creditor whose debt might be ever so inconsiderable, and thus be able to hold a large amount of property, and at the same time to bid defiance to the law, and defraud honest creditors. It was to remedy these and other defects in the law that the several provisions contained in the sections of our present law, before enumerated, were enacted, by the passage of a new statute in 1841, the provisions of which, with some additions and modifications, are incorporated into our Revised Statutes. Section 15 was intended to provide and does provide a way in which creditors can reach promissory notes and other choses in action lodged merely but not pledged in the hands of a third person; and section 16, we understand, was intended to provide and does provide a remedy for creditors in cases where any personal property, whether choses in action or any other property, has been pledged, and is in the hands of a third person, subject to any pledge, lien or mortgage. It would have been a great oversight in the legislature to have provided that the debtor's interest in all other kinds of personal prop-

erty thus pledged could be reached by the creditor, and be applied to the payment of his debt, and to have omitted altogether to make any provision by which the debtor's right in promissory notes and all other choses in action thus pledged could be made available ; especially as this is a kind of property perhaps oftener turned out as collateral security in this State than any other, and more especially as the legislature seemed to have particularly in view, in the provisions of the statute of 1841, the adoption of some method by which to reach promissory notes and other securities of that kind upon the trustee process, which, prior to that time, for the reasons before stated, had been held to be excluded from the operation of such process. We cannot suppose that the legislature intended to omit altogether, this part, often so important a part, of a debtor's property, and leave it entirely beyond the reach of his creditors ; and it is evident, from the provisions of the statute of 1841, we think, that they did not make any such omission, either intentionally or by accident. We think it evident that the legislature intended by the use of the words, "personal property," in section 16, to include notes and other choses in action, such as are enumerated in section 15, as well as other kinds of personal property, all of which may be held in pledge or as collateral security, and the term is comprehensive enough to include them all without any forced construction. This statute of 1841 made such provisions as to secure *bonâ fide* purchasers of a note against any liability to loss, and the maker of the note from any liability to be called upon twice for payment, without fault of his own, while at the same time it makes provision for holding persons as trustees, on account of negotiable notes and other choses in action, either lodged or pledged, in their hands ; (Revised Statutes, ch. 208, secs. 18, 19, 20 and 21 ;) so that the reason for the rule stated in *Stone* v. *Dean* now no longer exists.

But it is said that the terms used in prescribing the duties of the receiver in the two sections are different; that he is to *"collect"* in section 15, which, it is said, commonly refers to notes, and to *"dispose of"* in section 16, which, it is said, can only mean to sell, and must necessarily apply to other property than notes, bonds or promises to pay. But we presume that the receiver, under section 15, would not only need to *collect*, but, in case of a bond or other promise for the delivery of property (other than money), provided for in that section, he would be obliged to *sell* such property before he could apply the proceeds as that section directs. Under the authority to collect in this section, the receiver is empowered to collect, sell, and do whatever is necessary should be done, to convert the notes, bonds and other property referred to in that section into money, so that he might apply the same to the payment of the claim of the principal debtor. And the same would hold true of the authority conferred upon the receiver, in section 16, by the use of the words, "dispose of." It would, probably, occur to any competent receiver that the best way to *dispose of* a good note, in order to realize the greatest amount of money upon it, would be to collect it, and the best way to *dispose of* cattle, horses and carriages, would be to sell them at auction; and we have no doubt the terms used in each section are comprehensive enough to confer upon the receiver sufficient authority to do all that is necessary to be done in order to carry into full effect the provisions of these several sections, under such directions as the court are authorized to give him in each particular case.

The provision in section 16, that the receiver shall be appointed where the property held in pledge or upon mortgage "at the time of the disclosure has not been sold by the trustee," was not in the original statute of 1841, but was inserted at the revision in 1842, for the very plain reason that where a pledgee had, in pursuance

of the terms of the contract under which the property was pledged, or a mortgagee had, by authority of law and for condition broken, sold the property thus pledged or mortgaged, and converted it into money before disclosure, no receiver was necessary, but the liability of the trustee could be determined upon his disclosure merely. Where such sale had not been made, and in cases where the trustee could not legally sell the property thus pledged before disclosure, then a receiver is to be appointed. The application which the receiver is to make of the money, under section 16, is also the same as that provided for in section 15, only that he is first to discharge the subsisting lien. The language of section 17 favors and confirms the construction which is here given to the 16th. It mentions "note, order, receipt, bill, bond, promise, or *other* property," referred to in the two preceding sections. Why speak of *other* property, if "note, order, receipt, bill, bond and promise," before enumerated, were not considered as property, and if they were not all intended to be included in the terms *personal property*, as here used?

The decision of this question makes it apparent that the trustee in this suit *may be* chargeable upon his disclosure, although there are not sufficient facts appearing in the disclosure to show whether he is in fact so or not. It appears probable that there may be a large balance in the trustee's hands, over and above paying the debt of Goodall to the trustee, when the debts are all collected which the trustee holds as security, as upon the facts stated it would seem probable that they may be. The trustee does not state, and at the time of his disclosure had not, it would seem, made such examination as to know what the amount of such balance might be. He thinks it would be several hundreds, and it may prove to be several thousands of dollars. How the trustee's liability upon the guardian's bond will affect the case can hardly be determined upon the facts before us. It does not appear what

the penal sum in said bond is. It may be one hundred dollars, or one thousand dollars, or ten thousand dollars. After obtaining all the facts in the case by a further disclosure of the trustee, the plaintiff may conclude to discharge the trustee without having a receiver appointed; or he may find, or be able to show, that the agreement that the trustee should hold these claims as security for signing this bond, is void under section 34, of chapter 208, Revised Statutes; and he may thereby be enabled to avail himself of all the surplus, after paying the debt of the principal defendant to the trustee. The penal sum in the bond may be such that there will prove to be funds enough in the trustee's hands to pay his claim against the debtor, and also to indemnify him for signing said bond, even if it take the full amount of the penal sum in the bond to do so, and still there may be something left for the plaintiff; but we see no reason why the agreement made between the principal defendant and trustee, upon the signing of the guardian's bond, that the trustee should hold the notes then in his hands as security, or as an indemnity against liability upon said bond, is not a valid agreement which must be fully carried into effect in some way, unless it can be shown to be void in the way and for the reason above stated. The cases cited as authority by the plaintiff upon this branch of the case are not to the point; they are not analogous; nor are those cited by the trustee. A man may as properly take security against a liability that is contingent, as against one that is fixed and certain. It is every day's practice for men in business, who are in the habit of signing notes as surety, or of signing bonds in the same way, whether administration, or guardian's, or collector's, or any of the various official bonds required by law, to take security by mortgage upon real estate or personal property, or by receiving notes and other securities of that kind, in pledge; and the length of time that might elapse before such liability would be

likely to be determined might be a sufficient reason of itself why a prudent man would desire such security. The creditor wishing to avail himself of the surplus, if any, thus in the trustee's hands over and above discharging his own liabilities, can do so, as this plaintiff seeks to do, by virtue of the trustee process; but the fact that he may be obliged to wait longer in one case than another, before the liability of the trustee may be determined, does not affect the principle.

According to the agreement of the parties in the case, *The trustee must make a further and full disclosure.*